IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

TAMMY D.[1],

      **Plaintiff,**

v.

      Civil Action 2:22-cv-3026
      Magistrate Judge Elizabeth P. Deavers

**COMMISSIONER OF**
**SOCIAL SECURITY,**

      **Defendant.**

## OPINION AND ORDER

Plaintiff, Tammy D., brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for social security disability insurance benefits and supplemental security income.  This matter is before the Court for disposition based upon Plaintiff's Statement of Errors (ECF No. 17), the Commissioner's Memorandum in Opposition (ECF No. 18), Plaintiff's Reply (ECF No. 19), and the administrative record (ECF No. 6).  For the following reasons, the Court **REVERSES** the Commissioner of Social Security's non-disability finding and **REMANDS** this case to the Commissioner and the ALJ under Sentence Four of 405§ (g).

**I.    BACKGROUND**

Plaintiff protectively filed her applications for benefits in November 2018, alleging that she has been disabled since February 1, 2016, due to fibromyalgia, COPD, rheumatoid arthritis,

---

[1] Pursuant to General Order 22-01, due to significant privacy concerns in social security cases, any opinion, order, judgment or other disposition in social security cases in the Southern District of Ohio shall refer to plaintiffs only by their first names and last initials.

1

bone spurs in spine, ulcer in bowel syndrome, heart issues, irritable bowel syndrome, acid reflux, and arthritis. (R. at 238-50, 293.) Plaintiff's applications were denied initially in March 2019 and upon reconsideration in December 2019. (R. at 73-92, 135-70.) Plaintiff sought a *de novo* hearing before an administrative law judge ("ALJ"). (R. at 196-98.) ALJ Thomas L. Wang held a telephone hearing on December 17, 2020, at which Plaintiff, who was represented by counsel, appeared and testified. (R. at 31-72.) A vocational expert ("VE") also appeared and testified. (*Id.*) On January 28, 2021, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 12-30.) The Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. (R. at 1-6.)

**II.    RELEVANT RECORD EVIDENCE**

The Undersigned has thoroughly reviewed the transcript in this matter, including Plaintiff's medical records, function and disability reports, and testimony as to her conditions and resulting limitations. Given the claimed error raised by Plaintiff, rather than summarizing that information here, the Undersigned will refer and cite to it as necessary in the discussion of the parties' arguments below.

**III.   ADMINISTRATIVE DECISION**

On January 28, 2021, the ALJ issued his decision. (R. at 12-30.) The ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through December 31,

2019. (R. at 17.) At step one of the sequential evaluation process,[2] the ALJ found that Plaintiff has not engaged in substantial gainful activity since February 1, 2016, the alleged onset date. (*Id.*) The ALJ found that Plaintiff has the severe impairments of lumbosacral degenerative disease, bilateral foot degenerative joint disease, fibromyalgia, migraine, rheumatoid arthritis, sigmoid diverticulosis, chronic obstructive pulmonary disease, obesity, and degenerative joint disease first metacarpophalangeal joint right hand. (*Id.*) The ALJ further found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 20.)

Before proceeding to Step Four, the ALJ set forth Plaintiff's residual functional capacity ("RFC") as follows:

---

[2] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

> After careful consideration of the entire record, the [ALJ] finds that [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except push or pull is limited as per exertional weight limits, never climb ladders, ropes or scaffolds, occasional climb ramps or stairs, occasional balancing, stooping, kneeling, crouching and crawling, right hand is limited to frequent for handling and fingering, no extreme bright lighting like stage and bright inspection lights and headlights, can tolerate normal office lighting, no concentrated exposure to noise, no concentrated exposure to irritants such as fumes, odors, dust and gases and poor ventilation.

(R. at 21.)

At step four of the sequential process, the ALJ determined that Plaintiff is capable of performing her past relevant composite work as a bartender, cleaner/housekeeper and short order cook. The ALJ found that this work does not require the performance of work-related activities precluded by her RFC. (R. at 24.) The ALJ alternatively determined at step five of the sequential process that Plaintiff would be able to perform the requirements of representative occupations such as folder, marker, and storage rental clerk. (R. at 25.) He therefore concluded that Plaintiff has not been disabled since February 1, 2016. (*Id.*)

**IV.  STANDARD OF REVIEW**

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices the claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

V.  ANALYSIS

Plaintiff puts forth two assignments of error: (1) the ALJ's evaluation of Plaintiff's fibromyalgia was not based on the correct standard or understanding of the condition and he improperly evaluated Plaintiff's subjective complaints; and (2) the ALJ failed to explain why he excluded limitations relating to Plaintiff's sigmoid diverticulosis despite finding it a severe

impairment. For the following reasons, the Court agrees that the ALJ erred in considering Plaintiff's fibromyalgia.[3]

Plaintiff asserts that the ALJ erred in assessing the severity of, and the limitations presented by, her fibromyalgia, an impairment he found to be severe. In Plaintiff's view, despite this finding, the ALJ failed to then comply with his remaining obligations under SSR 12-2p. Plaintiff offers various critiques of the ALJ's analysis. First, Plaintiff argues that the ALJ erred because he emphasized objective findings irrelevant to fibromyalgia. (ECF No. 17 at 15.) Further, she challenges the amount of detail with which the ALJ supported his conclusion that Plaintiff's statements as to severity were inconsistent with her ability to do a range of activities. (*Id*. at 16.) According to Plaintiff, the ALJ failed to satisfy the articulation requirements of SSR 16-3p, leaving the Court to speculate as to the grounds for his conclusion. Finally, Plaintiff contends that the ALJ cherry-picked select portions of the medical record to discredit her complaints of pain. (*Id.* at 17.) As explained below, the Court concludes that the ALJ's decision regarding Plaintiff's fibromyalgia is not supported by substantial evidence.

As the Court of Appeals for the Sixth Circuit has acknowledged, "a *diagnosis* of fibromyalgia does not automatically entitle [a claimant] to disability benefits…." *Vance v. Comm'r of Soc. Sec.*, 260 F. App'x 801, 806 (6th Cir. 2008) (emphasis in original) (citing *Sarchet v. Chater*, 78 F.3d 305, 306–07 (7th Cir. 1996) ("Some people may have a severe case of fibromyalgia as to be totally disabled from working . . . but most do not and the question is

---

[3] This finding obviates the need for an in-depth analysis of the remaining issues. Thus, the Court need not, and does not, address the alternative basis that Plaintiff asserts support reversal and remand. Nevertheless, on remand, the ALJ may consider Plaintiff's other arguments if appropriate.

whether [claimant] is one of the minority.") (citations omitted)). Accordingly, in cases involving fibromyalgia, an ALJ must "decide . . . if [Plaintiff]'s pain is so severe as to impose limitations rendering her disabled." *Swain v. Comm'r of Soc. Sec.*, 297 F. Supp. 2d 986, 990 (N.D. Ohio 2003).

There is no question that a diagnosis of fibromyalgia, which the ALJ fully accepts here, says little about the degree of a Plaintiff's functional impairment. *Stephanie K. v. Comm'r of Soc. Sec.,* No. 1:22-CV-344, 2023 WL 2895603, at *5 (S.D. Ohio Apr. 11, 2023). "In cases where a Plaintiff has fibromyalgia, the 'cause of the disability is not necessarily the underlying condition itself, but rather the symptoms associated with the condition.'" *Huffman v. Saul*, No. 5:19-CV-449-CHB, 2020 WL 6937441, at *3 (E.D. Ky. Nov. 24, 2020) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007)); *see also Kalmbach v. Comm'r of Soc. Sec.*, 409 F. App'x 852, 862 (6th Cir. 2011) ("[C]laims related to fibromyalgia are related to the *symptoms* associated with the condition—including complaints of pain, stiffness, fatigue, and inability to concentrate—rather than the underlying condition itself.")."'Where the symptoms and not the underlying condition form the basis of the disability claim, a two-part analysis in evaluating complaints of disabling pain is employed.'" *Id.* (quoting *Kalmbach* at 862 (citing 20 C.F.R. § 416.929(a)).

For the first step, an ALJ "must determine whether the claimant has a 'medically determinable impairment' (MDI) of fibromyalgia, and if so, whether the MDI 'could reasonably be expected to produce the pain or other symptoms alleged.'" *Huffman,* 2020 WL 6937441, at *3 (quoting SSR 12-2p; 20 C.F.R. § 416.929(a). If so, "the ALJ proceeds to the second step and

must 'evaluate the intensity and persistence of the person's pain or any other symptoms and determine the extent to which the symptoms limit the person's capacity for work.'" *Id.* (quoting SSR 12-2p; 20 C.F.R. § 416.929(c)(1)). The "evaluation of the intensity and persistence of the pain or other symptoms also requires a finding on the 'credibility' of the claimant's statements or, more accurately, whether the complaints are 'consistent' with the evidence in the record." *Id.* (quoting SSR 12-2p; SSR 16-3p, 82 Fed. Reg. 49,462 (Oct. 25, 2017); *Rogers*, 486 F.3d at 247–48. ) As Plaintiff makes clear, she disputes only the second stage of the ALJ's evaluation.

The starting point for the Court's discussion is the ALJ's analysis of Plaintiff's fibromyalgia. As Plaintiff suggests, the ALJ's analysis of Plaintiff's fibromyalgia is quite limited. In discussing that diagnosis, the ALJ stated:

> There is no listing for fibromyalgia but the undersigned has considered SSR 12-2p in evaluating this condition. The record has very limited documentation of treatment for or complaints of fibromyalgia. There is no evidence that this condition in combination with other impairments meet[s] or equals any listed impairment.

(R. at 20.)

The ALJ then summarized Plaintiff's medical records as follows:

> *** On April 19, 2018, [Plaintiff] was diagnosed with fibromyalgia. She treated this with Lyrica. (Exhibit B1F/80). [Plaintiff] was also diagnosed with migraines without aura and treated this with Trokendi (Exhibit B1F/80). A physical examination showed that [Plaintiff] had no edema, full range of motion and she displayed comfort and cooperation (Exhibit B1F/79). In May 2018, [Plaintiff] reported that she had run out of medication to treat her pain and would like to restart (Exhibit B1F/54). On examination, [Plaintiff] was obese with a BMI of 39.9 but she had no edema and full range of motion (Exhibit B1F/55). At a September 17, 2018 doctor visit, [Plaintiff] was noted to have a positive rheumatoid factor, headaches, fibromyalgia and back pain (Exhibit B1F/43). On examination, [Plaintiff] had no edema and full range of motion. She displayed comfort and cooperation and had normal reflexes (Exhibit B1F/45). In October 2018, [Plaintiff]

> had left foot and right foot x-rays which revealed mild degenerative changes (Exhibit B1F/39, 41). A left wrist x-ray showed mild degenerative changes consistent with osteoarthritis (Exhibit B1F/37). A right[-]hand x-ray showed that [Plaintiff] had degenerative joint disease at the first metacarpophalangeal joint and mild degenerative changes at the other joints (Exhibit B1F/35). A November 2018 chest x-ray showed degenerative joint disease in the spine (Exhibit B1F/24). [Plaintiff] was also treated for wheezing and diagnosed with a COPD exacerbation (Exhibit B1F/29). At a December 2018 examination, [Plaintiff] was able to ambulate without assistance and had no edema or motor or sensory deficits (Exhibit B4F/4). In August 2019, [Plaintiff] was treated for alcohol withdrawal syndrome (Exhibit B6F/28, B7F).
> …
>
> A November 19, 2019 lumbosacral x-ray showed that the claimant had mild levoscoliosis with moderate multilevel degenerative changes (Exhibit B10F). At a consultative physical examination, the claimant had a normal gait, could walk on heels and toes, could squat, and was able to rise from the chair without difficulty (Exhibit B10F/8). The claimant had 5/5 grip strength and 5/5 strength in the upper and lower extremities. The claimant had no muscle atrophy. She was diagnosed with rheumatoid arthritis, chronic lower back pain with osteoarthritis, fibromyalgia, migraines, COPD, irritable bowel syndrome, duodenal ulcers.
>
> On January 28, 2020, the claimant had a rheumatology consultation (Exhibit B15F). The claimant reported a long history of diffuse myalgias and arthralgias (Exhibit B15F/4). The claimant had mildly elevated rheumatoid factor and diffuse tenderness all over with minimal signs of inflammatory arthritis most evidence in some swelling of her ankles and feet (Exhibit B15F/4). The claimant established care at Genesis Rheumatology Center on April 23, 2020 (Exhibit B11F). The claimant reported that she was diagnosed with rheumatoid arthritis in early 2018 and was started on medication. She reported that she was given medication at that time but had stopped taking it as she did not like that it decreased her immune system.

(R. at 22.)

Beyond this, the ALJ noted Plaintiff's testimony that she was unable to work because she has fibromyalgia and pain; that she has pain in her hands, wrists, feet and neck, that she can sit for about ten minutes but is unable to go up and down stairs; and that she is unable to bend, stoop or crouch. (R. at 21.) The ALJ also cited Plaintiff's fibromyalgia diagnosis in 2018 and her treatment

9

with Lyrica. (R. at 22 citing R. at 416.) Further, the ALJ cited to an Internal Medicine Examination completed by Dr. Russell Lee, a consultative examiner, dated November 19, 2019, confirming Plaintiff's fibromyalgia diagnosis. (R. at 22 citing R. at 627.) The ALJ explained that Plaintiff's fibromyalgia, along with certain other conditions, reasonably limited her to light work. (R. at 23.) The ALJ proceeded, presumably by way of a subjective symptoms evaluation, to state the following:

> As for the [Plaintiff's] statements about the intensity, persistence, and limiting effects of his or her symptoms, they are inconsistent as shown above, the treatment notes simply do not document her complaints to the extent alleged. She consistently is found to have normal findings on examinations. While she has alleged extreme limitations, the treatment notes instead indicate that the claimant was comfortable and cooperative and simply do not document complaints or findings consistent with her allegations. The record documents that the claimant was able to perform a range of activities. (Exhibit B9F). …

(R. at 23 citing R. 614-617.) Thus, the ALJ concluded that Plaintiff's statements about the intensity, persistence, and limiting effect of her symptoms are inconsistent "as shown above" and "treatment notes do not document her complaints to the extent alleged." (R. at 23.)

Plaintiff asserts that the ALJ erred, in part, because he emphasized objective findings irrelevant to fibromyalgia including imaging results, lack of edema, and full range of motion. The Court agrees that the ALJ appears to rely on physical examinations revealing full range of motion, no edema, and Plaintiff's comfort and cooperation, at least in part, as a basis for rejecting Plaintiff's statements regarding her fibromyalgia symptoms. The Commissioner points out that, regardless, the ALJ proceeded to undertake a subjective symptom analysis.

The Sixth Circuit has found the type of objective medical evidence at issue here to be irrelevant to determining the existence or severity of fibromyalgia. *Huffman v. Saul*, No. 5:19-CV-449-CHB, 2020 WL 6937441, at *7 (E.D. Ky. Nov. 24, 2020) (citing *Kalmbach*, 409 F. App'x at 863–64 ("[T]he absence of objective medical evidence to substantiate the diagnosis of fibromyalgia or its severity is basically irrelevant.")). This is so because "those with the disease 'manifest normal muscle strength and neurological reactions and have a full range of motions.'" *Id.* (quoting *Rogers*, 486 F.3d at 248). As the Sixth Circuit noted in *Preston v. Sec'y of Health & Human Servs.*, 854 F.2d 815, 818 (6th Cir. 1988) (per curiam) "when it comes to fibromyalgia, 'physical examinations will usually yield normal results—a full range of motion, no joint swelling, as well as normal muscle strength and neurological reactions.'" *Id.* at *8. "That is why 'objective tests or observations of muscle strength, range of motion, joint swelling and neurological reactions are of limited or no value in the typical fibromyalgia case as these signs would not ordinarily be expected.'" *Id.* (quoting *Shaw v. Comm'r of Soc. Sec.*, No. 1:16-CV-1133, 2018 WL 377383, at *4 (S.D. Ohio Jan. 11, 2018), *adopted by*, No. 1:16-CV-1133, 2018 WL 806286 (S.D. Ohio Feb. 9, 2018)). In fibromyalgia cases, objective evidence is often unavailing, and overemphasis on it is inappropriate. *Id.*; *see also Shahin v. Saul*, 18-cv-12939, 2020 WL 38931, at *3 (E.D. Mich., Jan. 3, 2020) (same).

Accordingly, "[c]ourts in this circuit have routinely remanded matters 'because of the ALJ's undue emphasis on the lack of objective evidence.'" *Beckrow v. Saul*, No. CV 19-12834, 2021 WL 900558, at *3 (E.D. Mich. Feb. 18, 2021*), report and recommendation adopted sub nom. Beckrow v. Comm'r of Soc. Sec.*, No. 2:19-CV-12834, 2021 WL 872086 (E.D. Mich. Mar.

9, 2021) (quoting *Cooper v. Comm'r of Soc. Sec.*, 13-cv-11883, 2014 WL 4606010, at *16 (E.D. Mich., June 17, 2014) (collecting cases)). "Normal findings are not necessarily inconsistent with fibromyalgia, so considerations of normal gait, normal motor strength, non-tender extremities, normal sensation, and normal musculoskeletal range of motion are 'simply beyond the point.'" *Id*. (quoting *Madinger v. Comm'r of Soc. Sec.*, No. 2:16-CV-882, 2019 WL 5091958, at *6 (S.D. Ohio Oct. 11, 2019) (citation and quotation marks omitted)).

"[W]hen 'objective medical evidence does not substantiate the person's statements about the intensity, persistence, and functionally limiting effects of symptoms' of the claimant's fibromyalgia, an ALJ must consider "all of the evidence in the case record, including the person's daily activities, medications or other treatments the person uses, or has used, to alleviate symptoms; the nature and frequency of the person's attempts to obtain medical treatment for symptoms; and statements by other people about the person's symptoms.'" *Beckrow,* 2021 WL 900558 at *3 (quoting SSR 12-2p, 2012 WL 3104869 (July 25, 2012)); *see also Luukkonen v. Comm'r of Soc. Sec.*, 653 F.App'x 393, 399 (6th Cir. 2016).

Here, as noted, the Commissioner asserts that the ALJ undertook a proper subjective symptom evaluation. As the relevant excerpt demonstrates, the ALJ indicates that he considered Plaintiff's treatment for her fibromyalgia symptoms. His manner of doing so, however, forms the basis for an additional claim of error. On this point, Plaintiff contends that, among other deficiencies, the ALJ "took no notice of [her] fibromyalgia affirming findings such as trigger points [or] reports of chronic pain" or her rheumatologist's assessment that fibromyalgia was the cause of her pain." (ECF No. 17 at 17.) In response to this argument, the Commissioner

12

contends that the ALJ provided a detailed discussion of the medical evidence regarding Plaintiff's symptoms and properly weighed Plaintiff's subjective symptoms. According to the Commissioner, the ALJ's statement that the "record has very limited documentation of treatment for or complaints of fibromyalgia" should be read as part of the ALJ's overall evaluation of Plaintiff's fibromyalgia. (ECF No. 18 at 12.) In the Commissioner's view, Plaintiff's argument on this point amounts to nothing more than a request that the Court reweigh the evidence.

Initially, an ALJ's decision must "contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be *clearly articulated* so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p (emphasis added). *Huffman,* 2020 WL 6937441, at *5 "'It is more than merely 'helpful' for the ALJ to articulate reasons . . . for crediting or rejecting particular sources of evidence,' (such as a claimant's testimony of disabling symptoms), '[it] is absolutely essential for meaningful appellate review.'" *Id.* (quoting *Hurst v. Sec. of H.H.S.*, 753 F.2d 517, 519 (6th Cir. 1985)); *see also Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994) ("If an ALJ rejects a claimant's [complaints of pain] as incredible, he must clearly state his reasons for doing so."). Moreover, the Sixth Circuit has emphasized that the articulation requirement of SSR 16-3 is especially important in fibromyalgia cases because, "given the nature of fibromyalgia, where subjective pain complaints play an important role in the diagnosis and treatment of the condition, providing justification for discounting a claimant's statements is particularly important." *Id.* (quoting *Rogers*, 486 F.3d at 248).

As the excerpts of the ALJ's cursory discussion of Plaintiff's fibromyalgia symptoms

13

reveal, the ALJ characterized the record as containing only "very limited documentation of treatment for or complaints of fibromyalgia" and treatment notes as failing to "document complaints or findings consistent with Plaintiff's allegations." This lack of documentation was one of the ALJ's cited bases for rejecting Plaintiff's statements about the intensity, persistence, and limiting effect of her symptoms. The ALJ's assessment, however, inaccurately portrays the state of the record. Indeed, Plaintiff's complaints of pain are documented throughout her medical records, including in several of the records briefly discussed by the ALJ.

For example, Dr. Lee's examination notes document Plaintiff's complaints of generalized body pain, muscle aches, as well as extreme tenderness at times," and her description of the pain as a "constant aching pain" varying in "intensity from about a 3 to a 10." (R. at 623.) Dr. Lee also found that, with respect to fibromyalgia tender points, "8 out of 18 [were] positive," including "right trapezius, bilateral gluteal, bilateral greater trochanter, right second rib, left lateral epicondyle, and left knee." (R. at 626.) Dr. Sunita Chadha noted Plaintiff's complaints of diffuse pain and severe back pain, characterizing Plaintiff's Lyrica dose of 200 mg three times a day as "pretty high." (R. at 687-688.) When Plaintiff established care at Genesis Rheumatology Center in April 2020, she reported that she had fibromyalgia and that she was on 200 mg of Lyrica three times a day. (R. at 634.) Those records document Plaintiff's complaints of pain located in her neck, lower back, knees with the right knee experiencing greater pain than the left, and the right-hand ring finger. (R. at 635.) Plaintiff described her pain as constant, dull, aching, throbbing and sharp and 5/10 on a scale of 1-10. (*Id.*) Plaintiff also explained that her symptoms included afternoon fatigue, joint pain, joint swelling, morning stiffness, and numbness

of the hands. (*Id.*)  The ALJ's cursory reference to these records failed to acknowledge that they also note Plaintiff's pain-related complaints.  (R. at 22, 23.)[4]

Beyond this, other records document Plaintiff's pain-related complaints as well.  For example, records from December 2017 reflect Plaintiff's desire to resume taking Lyrica for her fibromyalgia because it worked better than the medication covered by her insurance.  (R. at 522.)  Additional records from December 2017 demonstrate that Plaintiff requested an increase in her Lyrica dosage because it was not helping her fibromyalgia pain.  (R. at 520.)  Her dosage was increased from 75 milligrams to 150 milligrams twice a day.  (R. at 521.)  In April 2018, Plaintiff reported symptoms of pain, morning stiffness, and low energy.  (R. at 413.)  Her daily dosage of Lyrica was confirmed as 150 milligrams three times a day.  (R. at 416.)  In September 2018, Plaintiff expressed various complaints of pain and her Lyrica dosage was confirmed to be 200 milligrams three times a day.  (R. at 379.)  Similar complaints of pain accompanied by requests for Lyrica are documented in May 2019 (R. at 343) and November 2019 (R. at 342).  Again, the ALJ's superficial treatment of Plaintiff's fibromyalgia failed to acknowledge Plaintiff's repeated complaints of pain.  Indeed, Plaintiff's complaints of pain continued despite the increased dosage of Lyrica to a level described by Dr. Chadha as "pretty high."

Thus, a review of Plaintiff's medical records reveals that the ALJ's characterization of the record as containing only limited documentation relating to Plaintiff's fibromyalgia

---

[4] Some of these records post-date December 31, 2019, Plaintiff's date last insured.  As noted, the ALJ considered these records and no claim of error in doing so is raised.  *See Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 850 (6th Cir. 2020) (citations omitted) (affirming use of evidence of a claimant's medical condition after the expiration of a date last insured if it "illuminates that condition before the expiration of insured status").

symptoms is inaccurate. To be clear of course, it is well-established that an ALJ is not required to discuss each piece of evidence or limitation considered. *Whitaker v. Comm'r of Soc. Sec.,* No. 3:22-CV-00922-JJH, 2022 WL 18494421, at *14 (N.D. Ohio Nov. 22, 2022), *report and recommendation adopted*, No. 3:22-CV-922, 2023 WL 1070267 (N.D. Ohio Jan. 27, 2023); *see also Conner v. Comm'r*, 658 F. App'x 248, 254 (6th Cir. 2016) (citing *Thacker v. Comm'r*, 99 F. App'x 661, 665 (6th Cir. 2004) (finding an ALJ need not discuss every piece of evidence in the record). Nevertheless, "courts have not hesitated to remand where an ALJ selectively includes only those portions of the medical evidence that places a claimant in a capable light and fails to acknowledge evidence that potentially supports a finding of disability." *Id.*; *see also Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 724 (6th Cir. 2014) (reversing where the ALJ "cherry-picked select portions of the record" rather than doing a proper analysis); *Germany–Johnson v. Comm'r of Soc. Sec.*, 313 F. App'x 771, 777 (6th Cir. 2008) (finding error where the ALJ was "selective in parsing the various medical reports"); *Johnson v. Comm'r of Soc. Sec.*, No. 2:16-cv-172, 2016 WL 7208783, at *4 (S.D. Ohio Dec. 13, 2016) ("This Court has not hesitated to remand cases where the ALJ engaged in a very selective review of the record and significantly mischaracterized the treatment notes."). A fair reading of the ALJ's decision reflects just such selective parsing in this case, preventing the conclusion that the ALJ properly evaluated Plaintiff's fibromyalgia.

An "ALJ must give some indication of the evidence upon which he is relying, and he may not ignore evidence that does not support his decision, especially when that evidence, if accepted, would change his analysis." *Whitaker,* 2022 WL 18494421, at *17. When, as here,

relevant evidence is not mentioned, the Court cannot tell whether the ALJ discounted the evidence or overlooked it. *Id*. (citing *Shrader v. Astrue*, No. 11-1300, 2012 WL 5383120, at *6 (E.D. Mich. Nov. 1, 2012)). In this case, the ALJ clearly found Plaintiff's claimed limitations arising from her fibromyalgia to be inconsistent with the record evidence. The ALJ's portrayal of the record evidence, however, raises questions preventing the Court from tracing his reasoning. As a result, the ALJ failed to build an accurate and logical bridge between the *relevant* evidence and the result. *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011). That was a failure to apply proper legal standards such that remand is required. *See Fyffe v. Comm'r of Soc. Sec.*, No. 1:21-CV-332, 2022 WL 2176538, at *11 (N.D. Ohio June 16, 2022).

Based on the foregoing, Plaintiff's Statement of Errors (ECF No. 17) is **SUSTAINED.** The decision of the Commissioner is therefore **REVERSED** and this action is **REMANDED** to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g), for further administrative proceedings. The Clerk is **DIRECTED** to enter **FINAL JUDGMENT** in this case pursuant to sentence four of 42 U.S.C. § 405(g).

       **IT IS SO ORDERED.**

Date: <u>May 4, 2023</u>        <u>/s/ *Elizabeth A. Preston Deavers*</u>
**ELIZABETH A. PRESTON DEAVERS**
**UNITED STATES MAGISTRATE JUDGE**